BANK OF THOMASVILLE *et al.* v. LESTER.

No. 9747.   July 11, 1933.

310

*Alexander & Jones* and *D. M. Parker, assistant attorney-general,* for plaintiff in error.

*H. H. Merry* and *H. F. Lawson,* contra.

GILBERT, J.   ■   ■The first headnote does not require elaboration.

■   The bank's cashier waived the maturity date, and agreed to immediately cash the certificates and invest the funds in warrants of Thomas County. The certificates were properly indorsed and delivered to the .cashier, with the request that the bank "segregate the said money for the specific purpose of such investment." The cashier "assured petitioner" that such would be done. Petitioner relied upon the promise, and was subsequently assured that the investment had been made. Under these facts, the relationship of Lester to the bank was materially altered. He was never a general depositor. After the transaction above stated was consummated, he no longer had a time deposit. Under the alleged facts the bank could legally apply the money to no purpose save to purchase warrants as per agreement. The money was to be "segregated." To "segregate" is to "separate or cut off from others or from the general mass or main body; *to set apart."* Webster's Dictionary. It

is true that the actual cash was not passed by the bank to and returned by Lester. The practical result is the same whether Lester performed the useless task of first withdrawing the money and then paying it back into the same bank for stipulated purposes. "In *Pollak* v. *Niall-Herin Co.*, 137 *Ga.* 25 (72 S. E. 415, 35 L. R. A. (N. S.) 13), it was said: 'Courts should deal with practical problems in a practical way, and give the same sense to a plain and ordinary business transaction which is uniformly attached to it by the business world.' Continuing, the court said: 'Our code declares that judicial notice will be taken of the general customs of merchants and similar matters of public knowledge. Civil Code (1910), § 5734. . . We dare say that no depositor who paid a note or draft payable at his own bank ever went through the senseless ceremony of first taking out his money at one window and immediately paying it in at another window. He pays the note or demand which his bank holds against him with his check; and if he has the money to his credit, and the bank is a going concern, with money on hand sufficient to cash the check, the payment is equivalent, in law and in fact, to a payment in money.'" *U. S. National Bank* v. *Glanton*, 146 *Ga.* 786, 790 (92 S. E. 625, L. R. A. 1917F, 600). Thus construed the facts are quite similar to those in *Salzburger Bank* v. *Standard Oil Co.*, 173 *Ga.* 722 (supra), though not identical. In that case it was said: "One who receives money to be paid to another, or to be applied to a particular purpose, to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity as a trustee for a breach of trust." Citing cases. In this case the bank is alleged to have advised Lester that it had performed its agreement, whereas it had not done so. In the *Salzburger Bank* case, the bank had actually issued its cashier's checks for the amount as agreed upon, and delivered them to the customer. That bank closed before the checks could be presented to the bank on which they were drawn. The principle applied in the *Salzburger Bank* case should be applied to the facts alleged in the present petition. In that case the customer simply paid the money to the bank for a special disposition. In this case, the customer withdrew his deposit and, in effect, handed the money back to the bank under the specific agreement above described. Compare Blakey *v.* Brinson, 286 U. S. 254 (52 S. E. 516), cited by plaintiff in error. The judgment in that case was the reverse of our

judgment in this case, due to the fact that there was a "mere debiting of his account, without more," by the customer, "for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid." *Council* v. *Planters Bank,* 43 *Ga. App.* 161 (158 S. E. 337), was a case where the facts were substantially like the facts in Blakey *v.* Brinson, and decided likewise. Williams *v.* Hood, (N. C.) 167 S. E. 574, is more nearly akin in its facts to this case, but not more so than are the facts in the *Salzburger Bank* case, supra. The ruling in the North Carolina case is contrary to ours in the *Salzburger Bank* case. We must, in such situation, follow the Georgia precedent. In Blakey *v.* Brinson, supra, the Supreme Court, reversing the judgment of the lower court, said: "The court below thought that the legal consequence to be attributed to the debiting of the account with the supposed purchase-price of the bonds was the same as if the respondent had cashed a check for the amount and had then proceeded to hand the money back to the bank under a specific agreement between him and the bank that the money was to be held as a special fund, for the sole purpose of completing the purchase. This view is not without support [citing authorities]. Such a procedure, if actually carried out, might afford a basis, which is lacking here, for the inference that respondent, no longer content with the role of creditor, had sought to establish a trust fund. But the mere debiting of his account, without more, for the reimbursement of the bank for the obligation which it was supposed to have incurred or paid, lends no support to such an inference."

Accordingly the court did not err in holding that Lester was entitled to priority, and in overruling the demurrer to the petition.

■■ The third and fourth headnotes do not require elaboration.
*Judgment affirmed. All the Justices concur.*