JASPER SCHOOL DISTRICT *v.* PICKENS COUNTY BANK
*et al.; el vice versa.*

Nos. 12568, 12578.  JANUARY 11, 1939.

434

*Roscoe Pickett* and *Henderson & Spence,* for plaintiff.

*E. M. McCanless* and *Ellis G. Arnall,* for defendants.

DUCKWORTH, Justice. Did the fund here involved constitute a "special deposit" within the meaning of that term as used in the Code? If it was such a deposit, title thereto never at any time vested in the bank, but remained at all times in the depositor. A deposit may be for a specific purpose; as where money or property is delivered to a bank for some particular designated purpose, such as a note for collection or money to pay a particular note or draft, such partakes of the nature of a special deposit to the extent that title remains in the depositor and does not pass to the bank. Code, § 12-303. In 7 Am. Jur. 299, § 424, in discussing such deposit, it is said: "The bank becomes a bailee of the deposit, as in the ordinary case of special deposit, in so far as the retention of the deposit is concerned; beyond such function, and in addition thereto, the bank has also the fiduciary duty of an agent to apply the deposit to the particular purpose for which it was delivered to the bank, and in case of the misapplication of the deposit, it may be followed on the trust-fund theory." In *Salzburger Bank* v. *Standard Oil Co.,* 173 *Ga.* 722 (2) (161 S. E. 584, 84 A. L. R. 403), it was held: "A bank which receives from an agent money for transmission to his principal holds such money as a trustee, and may be sued either at law for money had and received, or in equity as a trustee for a breach of the trust. While the delivery of these funds to the bank partakes of the nature of a special deposit, it is more accurate to look on it as one of a distinct class of deposits.

In receiving a deposit for the purpose of having it applied to a particular purpose, the bank acts as agent of the depositor; and when the bank fails to apply it at all, or misappropriates it, it can be recovered as a trust deposit." This court in the case of *Macon Savings Bank* v. *City Bank & Trust Co.*, 182 *Ga.* 291, 297 (185 S. E. 262), held as follows: "If a bank has possession of property as trustee or other fiduciary agent for another, it can not dispose of the property for its individual benefit. Such other person has a vested right to his property, *independently of the banking laws*, and on insolvency of the bank he may assert such right as against depositors and creditors of the bank. He may claim the property in kind if it can be identified; or if it has been mingled with the general assets of the bank, so that it can not be identified, and has been used to swell the general assets, he may in equity trace the property into such general assets and claim it in its changed condition, in preference to depositors and creditors of the insolvent bank. *Miller* v. *Gibbs*, 161 *Ga.* 698 (132 S. E. 626); *Bank of Thomasville* v. *Lester*, 177 *Ga.* 306 (170 S. E. 189)."

The case of *Edwards* v. *Bank of Talbotton*, 182 *Ga.* 469 (185 S. E. 824), is distinguishable on its facts from the instant case, in that in the former it appeared that the petitioner made no attempt to comply with the banking law as to time for bringing suit, but at the same time had complied with such law with reference to filing proof of his claim as a depositor as therein required. In that case it did not appear that the officials of the bank had ever consented to changing the general deposit, as requested by Edwards, to a special one, or that such officers were under any duty to make such change; and it appeared that when the bank was closed the deposit stood on the books exactly as it had stood from the beginning, and was a general deposit; whereas in the instant case it appears without contradiction that the deposit in question was received by the bank in the beginning upon the explicit agreement with the depositor that it would be held until March 1, next, and then paid to the Chase National Bank to retire certain bonds, owing by the depositor. It was shown that McLain was president and cashier of the bank, and also chairman of the board of trustees of Jasper School District when such agreement was made, and therefore that the bank official had full knowledge of the special nature of the deposit, consented thereto, and had a duty thereby to

apply the funds involved as provided in the agreement. It is true that the petitioner attempted to file proof of claim to this deposit, but the agent of the superintendent in charge advised it not to do so, and explained that defendant knew the trust nature of the deposit and intended to apply the funds as the bank was obligated under its agreement to apply the same. We are of the opinion that the deposit involved here was a special one, title to which was and is in the depositor, and it has a vested right to it as its own property independently of the banking law. The ruling made in the *Edwards* case, supra, does not require a different ruling.

Whether or not the nature of the deposit here involved relieved the plaintiff of the necessity of complying with the banking law regulating the liquidation of banks by the superintendent, the petitioner will not be denied the right to recover its property because, by acting upon the advice and information received from the agent of the superintendent of banks, it failed to file proof of its claim, and failed to bring this suit within the time required by the banking laws governing liquidation of insolvent banks, as codified in §§ 13-815 to 13-820 inclusive. In the case of Powers *v.* Amos, 94 Fla. 411 (114 So. 364), the Florida court held: 3. "The provision that 'such receiver shall pay all money received by him to the State treasurer to be held as a special deposit for the use and benefit of the creditors, subject to the order of the comptroller,' will not be held to apply to moneys received by the receiver as acting trustee, because this provision of the statute clearly applies to funds in which creditors of the defunct banking institution have an interest, and such creditors can have no interest in funds accruing from trust estates held by the defunct bank in its trust capacity. . . 5. It is the duty of the comptroller, through his receiver or agent, to execute the trust according to the terms under which the trust was created." In the instant case it was the duty of the superintendent to apply the deposit involved as provided in the agreement upon which it was accepted, or return it to the depositor in whom the title remained.

Counsel for the defendants state in their brief that the case of Commerce Trust Co. *v.* Farmers Exchange Bank, 332 Mo. 979 (61 S. W. (2d) 928, 89 A. L. R. 373), "is a leading case on the question here involved," and they quote freely from that case. But a portion of the last paragraph of such quotation is sufficient to show

438

the marked distinction between that case and the case at bar. We quote from page 991 of the case just referred to: "Plaintiff did not plead or offer to prove any reason for its non-compliance with the statute, except that it contended that the statute does not apply to its claim." In the instant case the plaintiff alleged that its failure to file proof of claim as required by the statute was caused by the agent of the superintendent of banks in charge; that all of the defendants knew the nature of its claim, and agreed, per statement of the agent, to apply the funds as originally agreed upon. We can not agree to the contention of the defendants that it was necessary to have such proof of claim in order that the superintendent might more correctly and expeditiously perform his work of liquidation. Both his agent and the bank president and cashier, under the allegations of the petition, had full knowledge of the trust nature of the petitioner's deposit, and the obligation of the defendant bank to pay it to the New York bank. All the grounds of the demurrer were without merit, and the court erred, as asserted in the main bill of exceptions, in sustaining certain grounds of the demurrer and dismissing the petition, but properly overruled the grounds of demurrer upon which judgment error is assigned in the cross-bill.

*Judgment reversed on the main bill of exceptions; and affirmed on the cross-bill. All the Justices concur.*

ATKINSON, P. J., concurs in the result.